IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| SONJA MARIA RUFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 120-177 |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security terminating her Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.   BACKGROUND**

Plaintiff applied for SSI on June 3, 2013, alleging a disability onset date of April 17, 2013. Tr. ("R."), p. 253. The Administrative Law Judge ("ALJ") issued a fully favorable decision on July 15, 2013, the comparison point decision ("CPD") for the current case. R. 249-58. At the time of the CPD, Plaintiff's breast cancer met Listing 13.10 of 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 6. Since the CPD, Plaintiff had numerous mental and physical impairments, and particularly relevant to the limitations found by the ALJ in the current appeal, the impairments included

degenerative disc disease, a history of breast cancer with recent breast reconstruction, depression, and anxiety. R. 16. Pursuant to a continuing disability review, the Social Security Administration determined medical improvement had occurred to the point Plaintiff's disability ceased as of April 26, 2018. R. 119-20. Plaintiff was forty-nine years old at her alleged disability onset date and fifty-four years old on the date her disability was determined to have ceased. R. 5-6.

Plaintiff requested a hearing before an ALJ, resulting in a hearing held January 13, 2020. R. 15-89. At the hearing, the ALJ heard testimony from Plaintiff, represented by attorney William R. McCracken, and Ryan Farrell, a Vocational Expert ("VE"). The ALJ issued an unfavorable decision on February 13, 2020, concluding Plaintiff's disability ended on April 26, 2018, and she had not become disabled again since that date. R. 141-43.

On September 25, 2017, the Appeals Council ("AC") granted Plaintiff's request for review. R. 10-14. In the AC's September 9th correspondence with Plaintiff, the AC notified Plaintiff it was (1) evaluating the persuasiveness of opinion evidence under the newly revised regulatory criteria of 20 C.F.R. § 404.1520c, effective starting March 27, 2017; (2) allowing Plaintiff an opportunity to provide a statement or additional information; and (3) planning to still find Plaintiff is not disabled. R. 259-63. Plaintiff provided a statement, R. 665-667, which the AC considered, but on November 9, 2020, the AC issued an unfavorable decision. R. 5-9.

Applying the sequential process required by 20 C.F.R. § 404.1520 and adopting the ALJ's "findings or conclusions regarding whether [Plaintiff] is disabled," the AC found:

1. The claimant engaged in substantial gainful activity during the following periods: January 1, 2018, through June 30, 2018 (20 CFR 404.1520(b) and 404.1571 etseq.). However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

Case 1:20-cv-00177-JRH-BKE   Document 12   Filed 12/09/21   Page 3 of 14

2. Medical improvement occurred on April 26, 2018 (20 CFR 404.1594(b)(1)).

3. The medical improvement is related to the ability to work because, by April 26, 2018, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)).

4. The medical evidence establishes that, since April 26, 2018 the claimant has had the following severe medically determinable impairments (20 CFR 404.1594(f)(6)): degenerative disc disease, a history of breast cancer with recent breast reconstructions, depression, and anxiety. These are the claimant's current impairments.

5. Based on impairments present since April 26, 2018, the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except she can never climb ladders, ropes, or scaffolds, can occasionally stoop, and can frequently balance, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally engage in overhead reaching with her right upper extremity. She can tolerate occasional exposure to hazards such as unprotected heights and moving machinery. She cannot work outdoors. She remains capable of tasks consistent with a reasoning development level of two or less as defined within the Directory of Occupational Titles. She cannot engage in assembly line work, but remains capable of tasks requiring no more than occasional changes in work setting or duties. She can occasionally interact with supervisors and coworkers, but can never interact with the public as part of her assigned work duties. She will be off-task for five percent of the workday, exclusive of regularly scheduled breaks.

6. Since April 26, 2018, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

7. Since April 26, 2018, based on an exertional capacity for a reduced range of light work and the claimant's age, education, work experience, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 202.14. Examples of jobs that exist in significant numbers in the national economy include marker, housekeeping cleaner and router. The claimant's disability ended on April 26, 2018, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

R. 5-7.

On December 7, 2020, Plaintiff filed this civil action requesting reversal or remand of the adverse decision of the ALJ, as modified by the AC. (Doc. no. 1.) Plaintiff argues the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred

3

in giving no weight to Plaintiff's Veteran Affairs ("VA") 100% disability rating; (2) the ALJ erred in failing to consider Plaintiff's combination of impairments in assessing her ability to engage in competitive work activities; (3) the ALJ erred in failing to include all of Plaintiff's severe and non-severe impairments in the hypothetical question to the VE; and (4) the ALJ erred in failing to accurately develop the record. See doc. no. 10 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 11.

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial

4

evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.   DISCUSSION

#### A.   The Revised Regulations Do Not Require Giving Weight to the VA Rating

Plaintiff argues the ALJ would have found her disabled had the ALJ accorded proper weight to the VA 100% disability rating, as opposed to giving the VA rating no weight. Pl.'s Br., pp 9-10. Plaintiff first argues the new regulations do not apply because she filed her original application for disability benefits on June 3, 2013. Id. at 1, 9-10. Second Plaintiff argues even if the new regulations apply, the ALJ committed error by stating "no weight" be given. Id. at n. 4, p. 10. As discussed below, these arguments do not form a valid basis for reversal or remand.

Contrary to Plaintiff's contentions, the application date of the original filing for social security benefits is not the same date applied to the review of cessation of those benefits. Rather, "a timely request for administrative review of a disability cessation determination or decision . . . constitutes a protective filing of an application permitting a determination of disability through the date of the final determination or decision on appeal." SSR 13-3p, 78 Fed. Reg. at 12,131. Thus, the application date to determine which regulations apply for review of Plaintiff's disability cessation is the date of request for administrative review. Plaintiff filed her request for administrative review through a hearing before an ALJ on July 19, 2019, marking the date of her application.

Prior to March 27, 2017, the Commissioner's regulations, and Eleventh Circuit precedent instructed the ALJ to assign "great weight" to the VA's disability rating. See 20 C.F.R. § 404.1504; SSR 06-3p ("the adjudicator should explain the consideration given to [a VA disability decision] in the note of decision for hearing cases"); Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984) (quoting Bloodsworth, 703 F.2d at 1241) (holding "[t]he findings of disability by another agency, although not binding on the [Commissioner] are entitled to great weight"); Ostborg v. Comm'r of Soc. Sec., 610 F. App'x 907, 914 (11th Cir. 2015) ("A VA rating, while not binding on the SSA, is evidence that should be considered and is entitled to great weight") (citation omitted). "Great weight" does not mean controlling, but "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." Brown-Gaudet-Evans v. Comm'r of Soc. Sec., 673 F. App'x 902, 904 (11th Cir. 2016).

Pursuant to the revised regulations, applicable to claims filed after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any

6

medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a) (2017); 416.920c(a) (2017). As to other agency determinations, such as a VA disability determination, the new regulations state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled, blind, employable, or entitled to benefits." 20 C.F.R. § 404.1504. Moreover, the regulations specify that VA disability ratings constitute evidence that is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). Nevertheless, the regulations require the ALJ to "consider all of the supporting evidence underlying the other governmental agency['s] . . . decision that [the ALJ] receive[s] as evidence in [a plaintiff's] claim." 20 C.F.R. § 404.1504; see also Noble v. Comm'r of Soc. Sec., 963 F.3d 1317, 1330 (11th Cir. 2020) (affirming new regulations no longer require analysis of agency determinations, but supporting evidence must be considered).

Accordingly, the Court is not persuaded by Plaintiff's argument the ALJ erred by finding Plaintiff's 100% VA disability deserved no weight. Under the new regulations, the ALJ was not required to assign any persuasiveness or provide any analysis of the VA disability rating. See 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). Rather, the ALJ was only required to consider the evidence underlying the VA's decision. See id. Additionally, while Plaintiff does not argue the ALJ failed to address the evidence underlying the VA's determination, the Court finds such an argument unpersuasive because of the ALJ's comprehensive assessment of all the evidence received in Plaintiff's claim under 20 C.F.R. § 404.1513. See R. 121-29.

### B. The ALJ Considered all Impairments and Combination of Impairments

The AC explicitly adopted the ALJ's step one, two, three, four, five, six, and eight findings, and the Court examines the ALJ's findings as adopted by the AC. See R. 4-5. Plaintiff argues the ALJ failed to properly consider all of Plaintiff's impairments, however Plaintiff fails to detail how the ALJ failed to do so. The ALJ began by stating Plaintiff's RFC "has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments" R. 121. The ALJ then identified Plaintiff's initial level impairments due to "breast cancer, migraine headaches, depression and back pain" and then noted further reported impairments on appeal of "fluctuating depression, knee issues, a slipped disc, a VY incision, anxiety, loose stool, chronic chest pain, memory loss, hepatitis B, MRSA, MSSA, lymphedema, and breast cancer surgery." Id.

The ALJ proceeded to discuss in detail the medical and other evidence related to these impairments. R. 119-29. First, the ALJ discussed Plaintiff's function reports in which she "reported chest, back, and ankle pain," that she "did not like being around crowds," and she had "memory and concertation deficits." R. 121. Then the ALJ detailed the letters of Plaintiff's spouse, supervisor, and coworkers reporting "pain, depression, anxiety, and stress." R. 122. Ultimately the ALJ found the statements of Plaintiff "could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence."

The ALJ then turned to the medical evidence of record from January 2015 through December 2019. The ALJ detailed the evidence presented by Plaintiff from Charlie Norwood

VA Medical Center, Eisenhower AMC, Augusta Center for Psychosocial Services, Augusta Prime Care Center, Augusta Pain Center, Acute Surgical Care and Augusta University Health. R. 123-26. The evidence included various medical complaints of right breast area pain, right chest discomfort, right upper arm tenderness, right hand and wrist swelling, thoracic back pain, lower back pain, abdominal pain, depressed mood, anxiety, suspiciousness, sleep disruption, flattened affect, mood disruption, low motivation, neglect of appearance, concentration deficits, difficulty establishing and maintaining friendships, nausea, and vomiting. R. 123-26.

Finally, the ALJ moved on to the medical opinions of record. R. 126. The ALJ discussed the persuasiveness and weight given to the state medical consultants: Drs. Robert Koontz, Maureen Muokeke, Jonathon Mordlicht, Sahkoora Omunuwa and Mrs. Michelle Lyn, the Compensation and Pension Examination, the consultative examiners: Drs. Reginald Brown and Adrian Janit, the third-party reports of claimant's spouse, supervisor and coworkers, and the VA disability rating. R. 126-129. The ALJ concluded by stating he considered all the medical evidence. R. 129.

The Court finds the ALJ considered all of Plaintiff's impairments, and the RFC is supported by substantial evidence for the reasons stated in the ALJ's opinion. "'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits").

Thus, based on the ALJ's opinion, citation to records containing diagnoses of Plaintiff, and the overall medical evidence, it is clear the ALJ considered Plaintiff's impairments individually and in conjunction with Plaintiff's other impairments at step four, and the ALJ's step four findings are supported by substantial evidence.

### C.     The ALJ Properly Relied on the VE's Testimony to Determine Plaintiff Was Not Disabled

Plaintiff argues the ALJ erred at the final step by posing a hypothetical question to the VE designating her off task only five percent of the time rather than ten percent or 100%. Pl.'s Br., pp. 14-15. As explained below, substantial evidence supports the ALJ's finding that Plaintiff can stay on task ninety-five percent of the time and thus perform the requirements of unskilled, light work as identified by the VE.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and

10

> pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for these limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. at 1180; see also Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014); Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013).

The first hypothetical posed by the ALJ included the following limitation, "this individual will be off task for five percent of the workday. That would be exclusive of any regularly scheduled breaks." R. 82-83. The VE responded such an individual would be able to perform light jobs of marker, cleaner housekeeping, and router. R. 83-84. The ALJ posed a second hypothetical with the following change, "This individual would be off task for 15 percent of the workday. That would be exclusive of any regularly scheduled breaks. In addition, sir, this individual would be absent for more of one day each month, and that would be on an unscheduled basis." R. 84. The VE responded such an individual could perform no jobs in the national economy. Id. Plaintiff later asked the VE "would anything over ten percent off task be not considered competitive?" R. 86. To which the VE responded "yes." Id.

Plaintiff argues the medical evidence from April 2018 onwards supports a finding that "Plaintiff would be off task 100% of the time" and in the alternative at least ten percent of the workday and thus all competitive work would be excluded under the hypotheticals submitted to the VE. Pl.'s Br., pp. 14-15. Specifically, Plaintiff asserts:

> there is no way a normal human being could have engaged in any form of productive work given . . . she was having infections; she was having explants/implants, re-implants; she was having fat removed from her body and inserted/implanted into her breasts; she was experiencing severe pain and a variety of other symptoms associated with her other conditions, including nausea and periodic vomiting.

11

Id.  Plaintiff therefore argues the ALJ erred in formulating his RFC and relying on the first hypothetical to the VE which only accounted for a five percent time off task rating.  Plaintiff's argument is unavailing for two reasons.

First, Plaintiff conflates a time off task argument with an absenteeism argument.  Time off task determinations relate to the ability of a worker to maintain focus and complete tasks while at a workstation.  See Shinaberry v. Saul, 952 f.3d 113, 121 (4th Cir. 2020) (finding ability to stay on task relates to concentration, persistence, and pace of completing tasks).  Absenteeism relates to whether a medical issue will keep a worker away form work.  The ALJ's RFC determination Plaintiff would be off task five percent of the workday exclusive of regularly scheduled breaks is supported by substantial evidence.  R. 82, 120-21.  Examinations revealed Plaintiff had intact abstract reasoning, judgment and insight, appropriate orientation, immediate and remote memory intact, and her concentration appeared within normal limits.  R. 126-28.

Second, although not related to time off task, substantial evidence supports the ALJ's consideration of Plaintiff's medical history and ability to avoid absence.  Most importantly, the medical evidence of Plaintiff's breast cancer reviewed by the ALJ showed normal results in an April 2018 mammogram, no evidence of malignancy in either breast in a December 2018 breast MRI, and a benign finding in an August 2019 mammogram.  R. 123-24, 1950, 2342, 3677-78. Further, While Plaintiff has a documented history of medical procedures, the relevant question for the ALJ is whether at the time of his decision additional medical procedures would make Plaintiff unavailable moving forward.  Thus, considering the limitations found by the examiners, the ALJ and consequently the AC, accounted for Plaintiff's ability to stay on task as stated in the RFC.

In sum, in presenting his hypotheticals to the VE, the ALJ properly included all limitations in Plaintiff's RFC.  R. 21.  Because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper.  McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### D. The ALJ's Decision Was Based on a Full and Fair Record

Plaintiff also argues both the AC and ALJ erred by finding Plaintiff worked two quarters in 2018.  Pl.'s Br., p. 16.  Rather, Plaintiff contends she misstated at the hearing she had worked during this time period and the reported income for the time period in question is retirement pay.  Id.

The core of Plaintiff's argument is the ALJ and AC tainted the record by erroneously finding Plaintiff worked in 2018.  See id. (citing Mepham v. Colvin, No. CV 315-046, 2016 WL 3675805, at *5 (S.D. Ga. July 6, 2016)).  However, Plaintiff fails to show how this error harmed her.  Indeed, despite finding Plaintiff received income in 2018, the ALJ and AC still found a continuous twelve-month period during which Plaintiff had not engaged in substantial gainful activity.  R. 6, 113.  The ALJ and AC therefore proceeded to step two of the sequential evaluation process despite the allegedly erroneous finding.  The record reflects no other reliance on the finding of Plaintiff's income in 2018 to deny her benefits, and Plaintiff fails to show any prejudice suffered from the ALJ and AC's finding.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final

judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 9th day of December, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA